# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JUNIOR L. LOUDERMILK

      Plaintiff,

v.                        **CIVIL ACTION NO. 1:07CV141**
                                  **(Judge Keeley)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B), Rule 72(b), Federal Rules of Civil Procedure and Local Court Rule 4.01(d), on October 17, 2007, the Court referred this Social Security action to United States Magistrate Judge James E. Seibert with directions to submit proposed findings of fact and a recommendation for disposition. On February 27, 2009, Magistrate Seibert filed his Report and Recommendation ("R&R") and, in accordance with 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 6(e), directed the parties to file any written objections with the Clerk of Court within ten (10) days after being served with a copy of the R&R. On March 11, 2009, the attorney for the plaintiff, Junior L. Loudermilk ("Loudermilk"), filed objections to the R&R.

## I.  PROCEDURAL BACKGROUND

Loudermilk applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), on January 20, 2005,

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

alleging that he had been disabled since May 15, 2001 due to breathing problems, black lung disease, high blood pressure, acid reflux and hearing problems. On May 4, 2005, the Commissioner initially denied his claim. On July 22, 2005, following Loudermilk's May 30, 2005 request for reconsideration, the Commissioner again denied the claim.

On September 14, 2005, Loudermilk requested a hearing and, on July 17, 2006, an Administrative Law Judge ("ALJ") held a hearing at which both Loudermilk and a vocational expert ("VE") on his behalf testified. On September 22, 2006, the ALJ determined that Loudermilk retained the residual functional capacity to perform a full range of unskilled medium work and therefore was not disabled pursuant to Medical-Vocational Guideline Rule 203.14. On September 28, 2007, the Appeals Council denied Loudermilk's November 21, 2006 request for review, thus making September 22, 2006 the date of the final decision in this case. On October 17, 2007, Loudermilk timely filed this action seeking review of the final decision.

## II.  PLAINTIFF'S BACKGROUND

Loudermilk was born on October 29, 1947 and, therefore, was fifty-eight (58) years old on September 22, 2006. Pursuant to 20

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

C.F.R. §§ 404.1563(e), 416.963(3)(2008), he is considered a "person of advanced age" inasmuch as he is older than 55. He has a high school education and a past relevant work history as a lumber stacker in a lumber yard, which is considered to be unskilled heavy labor.

### III.    ADMINISTRATIVE FINDINGS

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520, the ALJ found as follows:

1.   Loudermilk met the insured status requirements of the Social Security Act;

2.   Loudermilk had not engaged in gainful activity since May, 15, 2001;

3.   Loudermilk's hypertension, acid reflux, hearing problems, breathing problems, mild reactive depression, and borderline intellectual functioning were considered "severe" under the regulations;

4.   Loudermilk's impairment or combination of impairments do not meet or equal one of the listed impairments in 20 CFR § 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.826;

5.   Loudermilk retained the residual functional capacity to perform the full range of medium work and was unable to perform any of his past relevant work that required heavy exertion;

## ORDER ADOPTING MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

6.  Loudermilk was born on October 29, 1947, was 58 years old and considered an "individual of advanced age";

7.  Loudermilk had a high school education and was able to communicate in English;

8.  Transferability of skills is not an issue in this case because his past relevant work was unskilled;

9.  Considering Loudermilk's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that he can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966); and

10. Loudermilk was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

## IV.  PLAINTIFF'S OBJECTIONS

Loudermilk objects to the following determinations in the magistrate judge's R&R:

1)  That he retained the residual functional capacity to perform the full range of medium work;

2)  That, despite Loudermilk's exertional and non-exertional impairments, the ALJ's reliance on Medical-Vocational Guideline Rule 203.14 was correct; and

3)    That the regulations did not require the ALJ to obtain

the testimony of a vocational expert ("VE") with respect

to the availability of jobs in the national economy.

The Commissioner contends that the record contains substantial

evidence to support the ALJ's determination that Loudermilk

retained the ability to perform the full range of unskilled medium

work and, therefore, correctly relied on Medical-Vocational

Guideline Rule 203.14.

## V.    MEDICAL EVIDENCE

The evidence of record in this case includes:

**A.    October 2000 through May 2005 Office notes from McClung Health and Wellness Center, Charles S. McClung Sr., D.O.**

These office notes indicate Loudermilk was treated for various
complaints, including sinusitis, stomach aches, low back pain,
lightheadedness, breathing difficulty, left shoulder pain, acid
reflux, dry skin, and an ingrown toenail. Dr. McClung provided
conservative treatment including prescribing medications.

1.    A June 19, 2001 office note indicating Loudermilk
complained of elevated blood pressure. Loudermilk reported that his
blood pressure on June 18, 2001 was 198/100. Examination revealed
blood pressure of 142/110 and 132/100;

2.    An August 6, 2001 office note indicating Loudermilk was
treated for elevated blood pressure; his blood pressure was
132/88;

3.    An October 8, 2001 office note indicating Loudermilk was
scheduled for breathing and hearing tests on October 25, 2001;

4.    A February 5, 2003 office note indicating Loudermilk's blood pressure was 122/98;

5.    A February 24, 2003 office note indicating Loudermilk's blood pressure was 134/80;

6.    A May 14, 2003 office note indicating Loudermilk complained of difficulty breathing and had a blood pressure of 130/90. Dr. McClung recommended a pulmonary function study and a treadmill stress test;

7.    A June 30, 2003 office note indicating Loudermilk's blood pressure was 136/100;

8.    A June 7, 2004 office note indicating Loudermilk's blood pressure was 122/88;

9.    An April 27, 2005 office note indicating Loudermilk complained of ears hurting, a sore throat and cough; his blood pressure was 128/90; and

10.    A May 18, 2005 office note indicating "sinus better," but Loudermilk was still coughing and had a blood pressure of 120/88;

**B.    April 2001 through November 2002, Progress notes from New River Health Association**

11.    A July 19, 2001, progress note from New River Health Association ("NRHA") indicating Loudermilk complained of lightheadedness and trouble swallowing and requested hearing and breathing tests. Dr. Doyle diagnosed exertional dyspnea, hearing loss, and gastroesophageal reflux disease;

12.    A January 18, 2002, progress note from NRHA indicating Loudermilk complained of dizziness and shortness of breath. S. Mehfa, D.O. diagnosed vertigo and shortness of breath and prescribed Antivert and Albuterol;

13.    A February 15, 2002 progress note from NRHA indicating that Loudermilk's breathing was much improved and the Antivert had dramatically helped the dizziness;

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

14.  A September 11, 2002 progress note from NRHA indicating Loudermilk continued to complain of breathing problems;

15.  A November 6, 2002 progress note from NRHA indicating Loudermilk complained of shortness of breath and hearing problems;

16.  A May 1, 2002 progress note from NRHA indicating Loudermilk complained of shortness of breath with any type of exercise, had no stomach complaints and reported a cut on the little finger of his right hand that occurred when he caught his finger doing some work at home;

17.  A June 12, 2002 progress note from NRHA indicating Loudermilk complained of being "quite short of breath," having daily occurrences of shortness of breath that interfered with his activities, such as "raking leaves, cutting wood and basically any outdoor activities";

18.  Throughout May, June, September and November, 2002, Loudermilk continued to complain of shortness of breath; however, his lungs remained clear without wheezes or crackles;

19.  A July 25, 2001 exam of Loudermilk's esophagus revealed esophageal dysmotility, hiatal hernia and gastroesophageal reflux;

20.  A July 9, 2003 CT exam of Loudermilk's chest revealed a calcified granuloma that required no medical follow-up;

21.  A March 16, 2005, Medical Report and Consultative Examination Ventilatory Function Report from Miraflor Khorshad, M.D., indicating no evidence of Bronchospasm, no acute respiratory illness present, and normal Spirometric results. X-rays of the same date indicated an essentially normal chest with clear lungs, normal heart and no pneumohydrothorax.

Physical Examination revealed that Loudermilk had no respiratory distress, normal gait, upper and lower extremity muscle strength of 4/5 bilaterally, bilateral basal dry rales in lungs, normal sinus rhythm, no murmur or thrill. Khorshad's **DIAGNOSIS** was 1) essential hypertension, stable, 2) coronary artery disease, 3) conduction deafness, both ears, and 4) impacted cerumen, left ear.

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Khorshad noted that Loudermilk's complaints of shortness of breath might be related to his obesity and possible coronary artery disease;

22. An April 7, 2005 State Agency Physical Residual Functional Capacity ("RFC") report from Gomez A. Rafael, M.D., indicating Loudermilk can occasionally lift and/or carry 50 lbs, can frequently lift and/or carry 25 lbs, can stand and/or walk for a total of about 6 hours in an 8-hour workday, can sit for a total of about 6 hours in an 8-hour workday, has unlimited ability to push/pull, has no postural, manipulative, visual, communicative or environmental limitations.

Significantly, Rafael noted that Loudermilk was not fully credible, that his PFS were normal, that his HTN was under good control, that he has a h/o hiatal hernia with GERD, that his physical exam was normal, that the neuro examination, including cranial nerves, was intact. Rafael reduced Loudermilk's RFC to medium work;

23. A May 3, 2005 chest x-ray showing normal-sized heart and clear lungs and no objective criteria to confirm CAD-cardiac severity non-severe; and

24. A June 30, 2006 Psychological Evaluation from Katherine Ball, M.S., indicating a **DIAGNOSIS** of Axis I: 311 Depressive Disorder NOS; Axis II: Borderline Intellectual Functioning; and Axis III: Loudermilk reported diabetes, COPD, high blood pressure, lightheadedness, pain and burning in legs and feet. Loudermilk's IQ scores were in borderline range of Verbal IQ - 80, Performance IQ - 79, Full Scale IQ - 78. His reading and arithmetic scores were in the low average range, and his spelling score in the deficient range.

Ball noted a good prognosis for overcoming the depressive symptoms, a poor prognosis for returning to labor-intensive work given his breathing impairment, and a poor prognosis for acquiring new skills through education or training due to impaired concentration.

**VI.   DISCUSSION**

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

### A.   Residual Functional Capacity

Loudermilk contends that the magistrate judge erred in finding that the record contained substantial evidence to support the ALJ's residual functional capacity ("RFC") determination that he was able to perform the full range of medium work. According to Loudermilk, the magistrate judge failed to consider the impact of his non-exertional limitations on his ability to perform the full range of medium work.

20 C.F.R. §§ 404.1545(a) provides that residual functional capacity is "the most you can still do despite your limitations" and is based on all of the relevant medical and other evidence in the record.

In paragraph five of the findings of fact, the ALJ based his determination on an extensive analysis of Loudermilk's work and daily living history, as well as his medical and psychological testing and evaluations, as well as all records submitted by his attorney. In particular, the ALJ considered the opinion of Katherine Ball, MS, that Loudermilk could never return to labor-intensive work, and weighed it in comparison to the other evidence in the case.

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

With respect to Ms. Ball's opinion that Loudermilk was disabled, the ALJ, in pertinent part, concluded:

> Ms. Ball's report and statements have been considered but they do not support a finding that the claimant is disabled. Ms. Ball fully credited the claimant's subjective complaints regarding breathing problems and musculoskeletal pain and numbness. On the basis of the claimant's subjective physical complaints, Ms. Ball opined that the claimant could never 'return to labor intensive work.' Ms. Ball is not a physician and she has not observed the claimant over an extended period of time; therefore, she is not qualified to assess the validity or severity of the claimant's physical problems and/or subjective, physical complaints. The record, including Ms. Ball's report, the records of Dr. McClung, and the report of the consultative physical examination, does [sic] not support the claimant's subjective, physical complaints; therefore, Ms. Ball's conclusion is based on a false premise and is not supported.

> Ms. Ball is qualified to offer an opinion regarding mental impairments and mental functioning. The record does not document that the claimant has had a significant change or deterioration in his level of mental functioning. Ms. Ball stated that the claimant's depression had developed because he was not driving and working. Sleep disturbance was the only sign of depression that Ms. Ball identified in her report and the report said, 'Sometimes sleep pretty good.' It also said that the claimant's depression was controlled by medications obtained from his family physician. Ms. Ball said that the claimant's

10

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

concentration was deficient based upon his
WAIS scores but she said that his affect,
thought process and content, judgment, recent
and remote memory , persistence, pace social
functioning, and sense of humor were all
within normal limits. Se also opined that the
claimant['s] performance on testing was
consistent with his vocational history.

Ms. Ball's report has been considered and has
been accorded limited weight because Ms.
Ball's report does not indicate that there has
been a significant change or deterioration in
the claimant's mental functioning; Ms. Ball's
opinion is based on her full acceptance of the
claimant's subjective, physical complaints;
Ms. Ball does not have an adequate basis to
form a reasonable opinion regarding the
claimant's physical complaints; and the record
as a whole does not support the claimant's
allegations regarding his physical complaints.

.   .   .   .

In paragraph five, the ALJ also considered the DDS's

assessment and concluded that its analysis of Loudermilk's residual

functional capacity, when viewed in light of the evidence, was

accurate.

Having considered all of the evidence of
record, the ALJ fully concurs with the DDS
assessment. <u>The claimant's allegations are not
entirely credible</u>. The claimant's allegations
have been evaluated and <u>the claimant does not
have medical signs and findings that would
generally be associated with complete or
permanent disability or with symptoms that are
as persistent, severe, or limiting as the</u>

11

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

---

claimant has alleged. The claimant's treating
physician did not refer the claimant to a
specialist for evaluation or treatment. The
DDS did arrange for the claimant to have
pulmonary function studies, x-rays and a
thorough physical examination. The pulmonary
function tests and x-rays were normal. The
physical exam showed normal range of motion
and near normal strength. The claimant's
medical tests and examinations are consistent
with the DDS assessment. The claimant's
impairments have not been severe enough to
require hospitalization or referral to
specialists. The claimant's treatment record
is generally consistent with the DDS
assessment.

After reviewing all of the evidence and
considering all of the opinions, the
undersigned (ALJ) has determined that the DDS
assessment was and is an accurate assessment
of the claimant's residual functional
capacity.

The ALJ has considered Ms. Ball's report and
does not find that the claimant has
significant work related limitations due to
mental impairment. The most that one might
infer from Ms. Ball's reports [is] that the
claimant has borderline intellect that limits
him to work that involves the same level of
intellectual/mental functioning that his past
relevant work involved. The ALJ finds that the
claimant does not have significant mental
limitations and that he certainly has no
mental limitations that would prevent him from
performing simple, unskilled work of the same
level of complexity that he has performed at
various jobs in the past.

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

> The ALJ has considered the claimant's
> allegations of shortness of breath and
> breathing difficulties, but finds no credible
> evidence of deterioration since the DDS
> completed its review and the DDS physicians
> found no need for environmental restrictions.
> The DDS assessment was compatible with the
> claimant's performance on testing, the
> findings at the consultative evaluation and
> the claimant's record of treatment.

(Emphasis added).

As a factual basis for his determination that Loudermilk
retained the capacity to perform all of the exertional demands of
medium work, the ALJ specifically listed and discussed in detail
the medical evidence detailed in Section V of this Order. Moreover,
regarding Loudermilk's claim of mental impairment, the ALJ reviewed
the facts and concluded:

> In particular the record does not support an
> allowance on the basis of mental impairment.
> The claimant completed high school, worked and
> raised a family. He was not in special
> education. He can read and write. He is not
> mentally retarded and he does not have
> significant limitations due to depression.

Concerning Loudermilk's reported activities of daily living,
the ALJ considered the following facts: that Loudermilk reported he
spent most of his day in an air-conditioned environment; that he
could walk about 100 feet before his feet began to hurt and he

became short of breath; and that he could stand about 10-15 minutes before his feet and legs began to hurt. Loudermilk also reported that he had to sit with his feet propped up for 15-20 minutes twice a day; that on a typical day, he prepared his breakfast, watched the morning news, took his medications, sat in the air-conditioned room with his feet elevated for about an hour, picked up the mail, carried the mail across the street to his father's home, visited with his father and watched TV, returned home about three o'clock, prepared dinner, checked his blood sugar, took his medications, and sat in a recliner watching TV until time to go to bed.

In Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), the Fourth Circuit held that the ALJ bears the ultimate responsibility for weighing the evidence and resolving any conflicts, and that, in reviewing for substantial evidence, the reviewing court does not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Thus, it is this Court's duty to determine whether the Commissioner's findings are supported by substantial evidence. Based on the foregoing, the Court concludes that they are.

**B.    Reliance on Medical-Vocational Guideline Rule 203.14**

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

In Coffman v. Bowen, 829 F.2d 518(4th Cir. 1987), the Fourth

Circuit held:

> The guidelines provide an ALJ with administrative notice of classes of jobs available in the national economy for persons who had, among other things, certain disability characteristics such as strength or exertional limitations. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2 §§ 200.00-204.00. The guidelines do not take into account nonexertional limitations such as pain, loss of hearing, loss of manual dexterity, postural limitations and pulmonary impairment. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). When nonexertional limitations such as these occur in conjunction with exertional limitations, the guidelines are not to be treated as conclusive. *Roberts v. Schweiker*, 667 F.2d 1143, 1145 (4th Cir. 1981);20 C.F.R. Pt. 404, Subpt. P. App. 2 § 100.00(a), (d)-(e)(2); 20 C.F.R. § 404.1569.

Id. at 518. (Emphasis added).

Relying on Coffman, Loudermilk argues that the Fourth Circuit

has conclusively prohibited an ALJ from relying on the Grids where

there are non-exertional limitations present in conjunction with

exertional limitations, and that, in this case, where there are

both, the ALJ was required to obtain the testimony of a vocational

expert.

## ORDER ADOPTING MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

In <u>Coffman</u>, the Fourth Circuit found that the ALJ had failed to support with substantive facts the conclusion that the claimant had the functional capacity to perform medium work.

> This mechanical application of the guidelines, where, as here, substantial non-exertional impairments existed, constituted reversible error.

<u>Id</u>. at 519.

Loudermilk also contends that Magistrate Judge Seibert erred in finding there was substantial evidence in the record to support the ALJ's reliance on Medical-Vocational Guideline Rule 203.14 (the "Grids"). He argues that the ALJ's determination at step three that exertional and non-exertional impairments existed prohibited the use of the Grids and required the testimony of a VE regarding the availability of jobs in the national economy that he could perform. As discussed below, these objections are without merit.

**1.**

The Medical-Vocational Guideline (GRID) Rules, 20 C.F.R pt. 404, subpt. P, app. 2, § 200.00(a) (2008), reflect the major functional and vocational patterns encountered in cases that cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment

## ORDER ADOPTING MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

is not engaging in substantial gainful activity and the individual's impairment prevents the performance of his vocationally relevant past work. For example, the specific rule at issue here, GRID Rule 203.14, establishes that an individual of advanced age, whose RFC limits him to medium work as a result of his severe medically determinable impairments, who has a high school education and a history of previous unskilled work experience, is not disabled.

Loudermilk relies on an unpublished opinion, <u>Eatmon v. Astrue</u>, 2008 WL 413844 (E.D.N.C.) (unpublished), to argue that the ALJ was precluded from relying on GRID Rule 203.14 in his case. In <u>Eatmon</u>, the district court stated:

> However, if the claimant cannot perform past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. <u>While the Commissioner often attempts to carry its burden through the testimony of a vocational expert ('VE'), who testifies as to jobs available to the claimant in the national economy, the use of a VE is not required if the Commissioner may avail himself or herself to the Medical-Vocational guideline, contained in 20 C.F.R. § 404 Subpart P. App. 1 (the "Grids")</u>.

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Grids are administrative rules reflecting major functional and vocational cases which cannot be evaluated on medical consideration alone. 20 C.F.R. § 404 Subpart P. App. 2 §200.00(a). Each rule directs a conclusion as to whether the individual is disabled for those individuals whose characteristics match the criteria of a particular Grid rule. *Id*. <u>If the claimant has no non-exertional impairments preventing him or her from performing a full range of work at a given exertional level, the Commissioner may rely solely on the Grids to satisfy the burden of proof</u>. *Coffman*, 829 F.2d at 518; *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983).

<u>Id</u>. at *2. (Emphasis added).

Moreover, at *4, <u>Eatmon</u> further states:

The Grids are dispositive of whether a claimant is disabled only when the claimant suffers from purely an exertional impairment. *Gory* 712 F.2d at 930. In the case of a claimant who suffers from non-exertional impairments or a combination of exertional and non-exertional impairments that prevent him from performing a full range of work at a given exertional level, the Grids may be used only as a guide. *Id*. at 931. <u>In such a case, the Commissioner must prove through vocational expert testimony that jobs exist in the national economy which claimant can perform</u>. *See Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989); 20 C.F.R. § 404.1569a. A non-exertional limitation is one that places limitations on functioning or restricts an individual from performing a full range of work in a particular category. *Gory*, 712 F.2d at 930.

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Id. at 4. (Emphasis added).

Eatmon, thus, recognizes and follows the rule from Coffman that mechanical application of the Grids where substantial, non-exertional impairments are involved constitutes reversible error.

Prior to Coffman, in Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1984), the Fourth Circuit had stated:

> In this case the evidence showed the claimant's pain to be sufficiently nonexertional in nature so as to preclude use of the grids as dispositive of the claim. We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids. *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.

(Emphasis added).

In Gory v. Schweiker, 712 F.2d 929, 930 (4th Cir. 1983), one of the cases cited in Eatmon, the Fourth Circuit explained the difference between exertional and non-exertional limitations:

> The regulations differentiate between exertional or strength limitations and nonexertional limitations. An exertional limitation is one which manifests itself by limitations in meeting the strength requirements of jobs. See 20 CFR 404, Subpart P, Appendix 2, § 200.00(e). A nonexertional

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

limitation on the other hand is a limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not, such as mental retardation, mental illness, blindness, deafness or alcoholism. Such limitations are present at all time in a claimant's life, whether during exertion or rest.

Thus, under Fourth Circuit precedent, whether an ALJ may proper rely on the Grids depends on whether, in a case where a claimant has both exertional and non-exertional limitations, the facts establish that he retains the RFC to perform all of the exertional demands of a certain level of work. If so, the ALJ may rely on the Grids. Here, after a careful analysis that weighed all the facts, the ALJ correctly determined that Loudermilk retained the ability to perform "all of the exertional demands of medium work."

20 C.F.R. § 404.1567(c) defines medium work as:

(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

The introduction to the Grids, 20 C.F.R pt. 404, subpt. P, app. 2, § 200.00(a) (2008), provides:

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

> The following rules reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevent the performance of his vocationally relevant past work. They also reflect the analysis of the various vocational factors (i.e., age, education, and work experience) in combination with the individual's residual functional capacity (used to determine his or her maximum sustained work ability to engage in substantial gainful activity in other than his or her vocationally relevant past work. Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rules, the rule directs a conclusion as to whether the individual is or is not disables. However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute such findings.

20 C.F.R pt. 404, subpt. P, Appendix 2, § 203.00(a) and (b) (2008) list the criteria for determining whether an individual is disabled, even though he is able to perform medium work:

> *Maximum sustained work capability limited to medium work as a result of severe medically determinable impairment(s):*
>
> (a) The functional capacity to perform medium work includes the functional capacity to perform sedentary, light, and medium work.

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Approximately 2,500 separate sedentary, light, and medium occupations can be identified, each occupation representing numerous jobs in the national economy which do not require skills or previous experience and which can be performed after a short demonstration or within 30 days.

(b) The functional capacity to perform medium work represents such substantial work capability at even the unskilled level that <u>a finding of disabled is ordinarily not warranted in cases where a severely impaired individual retains the functional capacity to perform medium work. However, we will find that an individual who (1) has a marginal education, (2) has work experience of 35 years or more during which he or she did only arduous unskilled physical labor, (3) is not working, and (4) is no longer able to do this kind of work because of a severe impairment(s) is disabled, even though the individual is able to do medium work.</u> (*See* § 404.1562(a) in this subpart and § 416.962(a) in subpart 1 of part 416.).

(Emphasis added).

Despite Loudermilk's marginal education, work experience of 13 years involving arduous unskilled physical labor, history of not working and claims of being unable to perform his past work due to his exertional and non-exertional impairments, the ALJ concluded that Loudermilk retained the RFC to perform the full range of medium work. That conclusion is supported by substantial factual evidence, including:

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

1) Loudermilk's own statements regarding his shortness of breath, hearing loss and physical limitations;

2) Loudermilk's s statements and testimony regarding his activities of daily living;

3) the DDS reports that consistently indicated Loudermilk retained the ability to perform the full range of medium work;

4) the psychological evaluation from Ms. Ball, to which the ALJ assigned a limited amount of weight because it was based on Ball's full acceptance of Loudermilk's subjective, physical complaints which do not conform with the other medical evidence of record; and

5) the additional evidence from NRHC and Dr. McClung, which do not document any significant new or different medical signs and findings and do not document a significant change or deterioration in the claimant's condition or functioning.

Based on the foregoing, Magistrate Judge Seibert's conclusion that the ALJ did not err in determining that substantial evidence supported the conclusion that Loudermilk retained the ability to perform the full range of medium work, and therefore could properly rely on Medical-Vocational Guideline (GRID) Rule 203.14 is not erroneous.

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

**2.**

Loudermilk also argues that, because the ALJ concluded he had exertional and non-exertional impairments, the regulations required the ALJ to receive and consider the testimony of a VE regarding the availability of jobs in the national economy. This argument, however, also lacks merit.

20 C.F.R. § 404.1560(c)(2) provides that the Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [claimant] can do, given [claimant's] residual functional capacity and vocational factors."  In <u>Hall v. Harris</u>, 658 F.2d 260, 267 (4th Cir. 1981), the Fourth Circuit held that "requiring the testimony of a vocational expert is discretionary." Moreover, in  <u>Cline v. Chater</u>, No. 95-2076, 1996 U.S. Dist. LEXIS 8692, at *4 (4th Cir. Apr. 19, 1996)(unpublished), our circuit held that the purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which the particular claimant can perform. This is consistent with 20 C.F.R. § 404.1560(c)(2), which states that it is the responsibility of the Commissioner to provide "evidence that demonstrates that other work exists in significant numbers in the national economy that

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

[claimant] can do, given [claimant's] residual functional capacity and vocational factors."

Here, the record contained substantial evidence to support the ALJ's decision not to question the VE because, after having determined under Grid Rule 203.14 that Loudermilk was both able to perform medium work and also met the criteria of Rule 203.14, the ALJ was not required to do so.

## VII. <u>CONCLUSION</u>

After examination of Loudermilk's objections, the Court concludes that he has not raised any issues that were not thoroughly considered by Magistrate Judge Seibert in his R&R. Moreover, upon an independent <u>de novo</u> consideration of all matters before it, the Court is of the opinion that the R&R accurately reflects the law applicable to the facts and circumstances in this action. It, therefore,

**ORDERS** that Magistrate Judge Seibert's Report and Recommendation be accepted in whole and that this civil action be disposed of in accordance with the recommendation of the Magistrate. Accordingly,

    1. The defendant's motion for summary judgment (dkt. no. 16) is **GRANTED**;

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

2.    The plaintiff's first motion to remand (dkt. no. 14) is

**DENIED**; and

3.    This civil action is **DISMISSED WITH PREJUDICE** and

**STRICKEN** from the docket of this Court.

Pursuant to Fed.R.Civ.P. 58, the Court directs the Clerk of

Court to enter a separate judgment order and to transmit copies of

this Order to counsel of record.

DATED: August 18, 2009.


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE